IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICK RYAN DOCKERY,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF JOILET, a municipal corporation, JOLIET POLICE DEPARTMENT, a municipal agency, SHERRIE BLACKBURN, a Joliet Police Officer, TERRY HIGGINS, a Joliet Police Officer, and ERIC BERNHARDT, a Joliet Police Officer, OTHER IDENTITY UNKNOWN POLICE OFFICERS,<br><br>Defendants. | No. 13 C 4878<br><br>Jeffrey T. Gilbert<br>Magistrate Judge |

## MEMORANDUM OPINION AND ORDER

Plaintiff Patrick Ryan Dockery filed a four-count complaint against Defendants City of Joliet, the Joliet Police Department and Joliet Police Officers Sergeant Sherrie Blackburn, Terry Higgins, Eric Bernhardt, and other unidentified police officers alleging use of excessive force (Count I), malicious prosecution (Count II), failure to provide medical care (Count III), and failure to properly train police officers in the use and deployment of a taser (Count IV). This matter is before the Court on Defendants' Motion for Summary Judgment [ECF No. 67]. For the reasons set forth in this Memorandum Opinion and Order, Defendants' Motion for Summary Judgment is granted as to Counts II, III and IV in their entirety and denied in all other aspects.

## BACKGROUND

The Court takes the relevant facts from the parties' Local Rule 56.1 statements of fact, including Defendants' statement of facts [ECF No. 69] ("Defs' SOF"); Dockery's response to Defendants' statement of facts [ECF No. 82] ("Pl's Resp. to Defs' SOF"); Dockery's statement

1

of additional facts [ECF No. 83] ("Pl's Additional SOF"); and Defendants' response to Dockery's statement of additional facts [ECF No. 93] ("Defs' Resp. to Pl's Additional SOF").

On July 13, 2011, Defendants Sergeant Blackburn and Officer Higgins, employees of the Joliet Police Department, arrested Dockery at the Evergreen Terrace Apartments, 311 North Bluff Street in Joliet, Illinois for trespass and destruction of property. Pl's Resp. to Defs' SOF [ECF No. 82, at ¶¶ 19-20]. Before taking Dockery to the police station, Sergeant Blackburn and Officer Higgins took him to Silver Cross Hospital to be evaluated, in part because of concerns he was under the influence of PCP. Pl's Resp. to Defs' SOF [ECF No. 82, at ¶ 21]. It is not disputed that Dockery remained calm and cooperative throughout the time he was transported to the hospital and then initially at the police station when he was booked for trespass and destruction of property. Defs' Resp. to Pl's Additional SOF [ECF No. 93, at ¶ 15].

While being fingerprinted at the Joliet Police Department, Dockery interacted with Officer Higgins and patted him on the shoulder. Pl's Resp. to Defs' SOF [ECF No. 82, at ¶ 26]. After being touched by Dockery, Officer Higgins took a step back from him. Pl's Resp. to Defs' SOF [ECF No. 82, at ¶¶ 29-30]. Officer Higgins considered the Dockery's pat on his shoulder to be an insult and an aggravated battery, although Officer Higgins admits that the contact was non-violent and did not cause him any harm. Pl's Resp. to Defs' SOF [ECF No. 82, at ¶¶ 26-27].

The parties dispute what happened next and assert that the videotape evidence of the incident supports their conflicting versions of the events. After Dockery made contact with Officer Higgins on the shoulder, Officer Higgins stepped back and then reached for Dockery's arm in order to handcuff him. Pl's Resp. to Defs' SOF [ECF No. 82, at ¶¶ 29-30]. At the same time, Sergeant Blackburn drew her taser because she observed Dockery's behavior change and believed that Dockery had made threatening movements toward Officer Higgins. Pl's Resp. to

Defs' SOF [ECF No. 82, at ¶¶ 32-35]. Dockery disputes that he made any threatening movements toward Officer Higgins after patting him on the shoulder and prior to being tased. Defs' Resp. to Pl's Additional SOF [ECF No. 93, at ¶ 21].

Sergeant Blackburn and Officer Higgins took Dockery's arms behind his back and attempted to handcuff him with a single pair of handcuffs. Pl's Resp. to Defs' SOF [ECF No. 82, at ¶ 46]; *but see* Defs' Resp. to Pl's Additional SOF [ECF No. 93, at ¶ 20]. Dockery states that being restrained by a single pair of handcuffs caused him pain and as a result he fell to the ground. Defs' Resp. to Pl's Additional SOF [ECF No. 93, at ¶ 20]. Earlier in the day when Dockery first was arrested, it is not disputed that Sergeant Blackburn and Officer Higgins linked two pairs of handcuffs together in order to handcuff Dockery. Defs' Reply to Pls' Additional Facts [ECF No. 93, at ¶¶ 9-10].

After Dockery fell to the ground, Defendants assert that Dockery kicked at Officer Higgins. Pl's Resp. to Defs' SOF [ECF No. 82, at ¶ 52]. Dockery disputes that he was kicking anyone. Pl's Resp. to Defs' SOF [ECF No. 82, at ¶ 52]. Dockery then attempted to stand up, and Sergeant Blackburn deployed her taser in probe mode for the first time. Pl's Resp. to Defs' SOF [ECF No. 82, at ¶ 52]. As a result of being tased, Dockery fell to the ground again. Pl's Resp. to Defs' SOF [ECF No. 82, at ¶ 53].

After being tased for the first time, Dockery sat up and pulled one of the probes out of his body. Pl's Resp. to Defs' SOF [ECF No. 82, at ¶ 56]. After that, the officers commanded Dockery "get on the ground." Pl's Resp. to Defs' SOF [ECF No. 82, at ¶ 58]; Defs' Resp. to Pl's Additional SOF [ECF No. 93, at ¶ 22]. Dockery, however, already was on the ground, and it is disputed whether Dockery was trying to stand up again. Defs' Resp. to Pl's Additional SOF

3

[ECF No. 93, at ¶ 23]. It is undisputed that Dockery never made any attempt to flee the Adult Booking Room at Joliet police station. Defs' Resp. to Pl's Additional SOF [ECF No. 93, at ¶ 29].

Sergeant Blackburn perceived Dockery still was a threat, and she attempted to tase Dockery again. Pl's Resp. to Defs' SOF [ECF No. 82, at ¶ 59]. Sergeant Blackburn also "drive stunned" Dockery additional times. Pl's Resp. to Defs' SOF [ECF No. 82, at ¶ 62]. It disputed how many times Sergeant Blackburn deployed her taser and/or attempted to "drive stun" Dockery. Dockery appears to be rolling around on the ground after being tased and "drive stunned." Pl's Resp. to Defs' SOF [ECF No. 82, at ¶¶ 63-65]. Defendants assert Dockery was kicking at the officers, which Dockery disputes. Pl's Resp. to Defs' SOF [ECF No. 82, at ¶ 63]. Dockery states he was rolling around because he had been tased multiple times. Pl's Resp. to Defs' SOF [ECF No. 82, at ¶ 63]. Eventually, additional officers entered the booking room and helped to put Dockery into handcuffs. Defs' Resp. to Pl's Additional SOF [ECF No. 93, at ¶¶ 27-28].

Dockery alleges that he suffered injuries as a result of these events and that he requested medical attention, but Defendants did not offer medical care to him. Defs' Resp. to Pl's Additional SOF [ECF No. 93, at ¶ 35]. Defendants do not dispute that Dockery did not receive any medical treatment from any member of the Joliet Police Department. Defs' Resp. to Pl's Additional SOF [ECF No. 93, at ¶ 36].

## LEGAL STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists if "the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether there is a genuine issue of fact, a district court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). And the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252.

In considering a motion for summary judgment, a court does not "evaluate the weight of the evidence, judge the credibility of witnesses or determine the ultimate truth of the matter" but rather "determine whether there exists a genuine issue of triable fact." *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008) (citation omitted). The court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. *Anderson*, 477 U.S. at 255; *Betaco, Inc. v. Cessna Aircraft Co.*, 32 F.3d 1126, 1138 (7th Cir. 1994); *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993). Rather, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The court, therefore, must look at the evidence as a jury

might, construing the record in the light most favorable to the nonmoving party and avoiding a temptation to decide which party's version of the facts is more likely true. *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009 (7th Cir. 1999).

## ANALYSIS

### I. Defendants Are Not Entitled To Summary Judgment As A Matter Of Law On Dockery's Excessive Force Claim

In Count I of his complaint, Dockery asserts that Defendants used excessive force when the Defendant police officers attempted to place him in handcuffs at the Joliet police station and when Sergeant Blackburn used a taser to subdue him multiple times unnecessarily even though he allegedly was complying with her commands and not resisting.

A claim that a police officer used excessive force in the course of an arrest is reviewed under the Fourth Amendment's objective reasonableness standard. *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 861 (7th Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Abdullahi v. City of Madison*, 423 F.3d 763, 768 (7th Cir. 2005)). In *Graham*, the United States Supreme Court instructs courts to look at three main factors to determine whether the use of force is reasonable: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect actively was resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. The Supreme Court also recognizes that courts must look at the totality of the circumstances and consider "the facts and circumstances of each particular case." *Id.*

Because law enforcement officers must make critical, split-second decisions in difficult and potentially explosive situations, the reasonableness of a police officer's actions must be evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)). In order to prevail on

6

summary judgment, however, the defendant officers must meet their burden with respect to each separate use of force. *See Deering v. Reich*, 183 F.3d 645, 652 (7th Cir. 1999) ("[I]n determining reasonableness [under *Graham*], we carve up the incident into segments and judge each on its own terms to see if the officer was reasonable at each stage.") (citation omitted); *Cyrus*, 624 F.3d at 863 (rejecting defendant's argument that if an initial use of force was reasonable, all subsequent uses of force must also be reasonable).

Looking at the *Graham* factors in the context of the facts and circumstances of this case, the first factor, the severity of the crime at issue, weighs in favor of Dockery. Dockery, a pre-trial detainee, was charged with criminal damage to property, obstructing a peace officer, and criminal trespass, all of which are misdemeanors. The Seventh Circuit generally has recognized that "it is unreasonable for officers to deploy a taser against a misdemeanant who is not actively resisting arrest." *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 730 (7th Cir. 2013). In *Cyrus*, the Seventh Circuit held that summary judgement was inappropriate because a jury could conclude that the use of force was excessive considering the *Graham* factors, including the fact that the defendant, at most, had committed misdemeanor offenses. 624 F.3d at 863, n.7. In addition, in this case, Dockery already had been arrested and transported to the police station when he was tased.

As to the second *Graham* factor, which is whether Dockery posed an immediate threat to the safety of the officers or others, there are disputed questions of fact. Defendants argue that Dockery posed a threat because they believed he was under the influence of PCP. Defendants' actions, however, were entirely inconsistent with that purported belief. Prior to being fingerprinted, Dockery was sitting on a bench unrestrained in the Joliet police station, and he was permitted to use the bathroom by himself.

In addition, there is videotape evidence of the sequence of events at the Joliet police station. The videotape shows what occurred while Dockery was being processed and what specifically happened during and after Officer Higgins' efforts to fingerprint Dockery, and Sergeant Blackburn's use of the taser during this confrontation. Defendants argue that "[w]hen the evidence includes a videotape of the relevant events, the Court should not adopt the nonmoving party's version of the events when that version is blatantly contradicted by the videotape." *Williams v. Brooks*, 809 F.3d 936, 941 (7th Cir. 2006) (citing *Scott v. Harris*, 550 U.S. 372, 379-81 (2007)). In this case, however, the videotape evidence of the incident does not blatantly contradict either party's version of the events. Rather, the videotape reasonably is subject to different interpretations. *See Capps v. Drake*, 2016 WL 5466106, at *2-3 (S.D. Ill. Sept. 29, 2016) (denying summary judgment in taser excessive force case because video was "subject to different interpretations" and it was not clear whether physical reactions by the plaintiff were caused by the Taser or volitional acts.); *Cyrus*, 624 F.3d at 862-63 (rejecting summary judgment in part because an arrestee's undisputed "barrel roll[s]" after being tased could be considered either an attempt to flee or an involuntary reaction to a taser shock). The Seventh Circuit has recognized that summary judgment often is not appropriate in excessive force cases because evidence surrounding a police officer's use of force can be susceptible to different interpretations. *Caitlin v. City of Wheaton*, 574 F.3d 361, 367 (7th Cir. 2009).

The third *Graham* factor directs this Court to consider whether the defendant actively resisted arrest or was attempting to flee. Although it is not disputed that Dockery did not attempt to flee, as discussed above, there is a material dispute of fact as to whether Dockery actively resisted arrest, or, as in this case, whether he resisted the Defendant police officers' efforts to subdue him and complete the booking procedure. The videotape does not indisputably support

8

either party's characterization of these events. Although the first *Graham* factor weighs in Dockery's favor, there are disputed questions of fact regarding the second and third *Graham* factors. Therefore, summary judgment is not appropriate.

In addition, the parties also dispute the number of times Sergeant Blackburn tased Dockery. Even if it is determined that Sergeant Blackburn's deployment of her taser in the first instance was not unreasonable or excessive force considering the circumstances, subsequent deployments of the taser when Dockery was on the ground could be deemed otherwise. Force is reasonable only when exercised in proportion to the threat posed. *Cyrus*, 624 F.3d at 862-63 (summary judgment denied in part because of a genuine dispute of material fact as to how many times an arrestee was tased). The Seventh Circuit also has noted that force becomes increasingly severe the more often it is used, and it is "the totality of the circumstances, not the first forcible act, that determines objective reasonableness." *Id.* at 863.

Because the Court must view the facts in the light most favorable to Dockery as the nonmoving party, there are disputed issues of material fact and the videotape reasonably is subject to different interpretations. Therefore, summary judgement on Count I is not appropriate in this case.

## II. Defendants Are Not Entitled to Qualified Immunity As A Matter of Law

Alternatively, the police officer Defendants argue they are entitled to summary judgment as a matter of law because they are entitled to qualified immunity. Specifically, the police officer Defendants assert that: (1) their actions were not unreasonable or excessive; (2) there is no clearly established law warning them of the potential illegality of their actions; and (3) Plaintiff's constitutional rights were not violated.

9

The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 232, (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether a defendant is entitled to qualified immunity, a court must consider two issues: "(1) whether the defendant violated the plaintiff's constitutional rights, and (2) whether the right at issue was clearly established at the time of the violation." *Rooni v. Biser*, 742 F.3d 737, 742 (7th Cir. 2014). In other words, even if a plaintiff demonstrates that excessive force was used, he also must further establish that it was "objectively unreasonable for the officer to believe that the force was lawful—*i.e.*, [a plaintiff] must demonstrate that the right to be free from the particular use of force under the relevant circumstances was 'clearly established.'" *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 725 (7th Cir. 2013).

To be clearly established at the time of the challenged conduct, the contours of the right at issue must be "'sufficiently clear that every reasonable official would have understood that what he is doing violates that right,'" and "'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Rabin v. Flynn*, 725 F.3d 628, 632 (7th Cir. 2013) (quoting *Humphries v. Milwaukee County*, 702 F.3d 1003, 1006 (7th Cir. 2012)); *see also Banks v. Stolz*, 2015 WL 1903291, at *4 (C.D. Ill. Apr. 27, 2015) (quoting *Green v. Carlson*, 826 F.2d 647, 649 (7th Cir. 1987)) ("The test for qualified immunity is 'whether the law was clear in relation to the specific facts confronting the public official when [he or she] acted.'").

Courts generally have found that "the use of a taser against an actively resisting suspect either does not violate clearly established law or is constitutionally reasonable." *Abbott*, 705 F.3d at 727-28. However, the use of a taser against a person who is not resisting arrest has been found

to violate clearly established law. *See Kingsley v. Hendrickson,* 801 F.3d 828, 832 (7th Cir. 2015).[1] The Seventh Circuit also has recognized that a jury could find that repeated use of a taser may become excessive and could be found to be an unreasonable use of force after an individual "was on the ground, unarmed and unable to stand up on his own." *Cyrus,* 624 F.3d at 863.[2]

Dockery argues that he was tased six or more times while cooperating with the police officers and/or not resisting their commands. Dockery admits that he patted Officer Higgins on the shoulder. It is disputed, however, whether that touching reasonably could have been perceived as an uncooperative or aggressive act. Viewing the facts in the light most favorable to Dockery, the Court cannot find that the Defendant police officers are entitled to qualified immunity as a matter of law because there are disputed issues of fact as whether the officers' actions were excessive under the circumstances and constituted a violation of Dockery's constitutional rights. In addition, even if a jury were to conclude that Dockery was not

---

[1] *See also Brooks v. City of Aurora, Ill.,* 653 F.3d 478, 487 (7th Cir. 2011) (noting that prior cases had established the illegality of the use of pepper spray on an arrestee who was "already ... handcuffed and ... offering no physical resistance" or was "lying face down ... with both arms handcuffed behind his back") (internal quotation marks omitted); *Forrest v. Prine,* 620 F.3d 739, 745 (7th Cir. 2010) (finding use of a taser was not unconstitutionally excessive when "the officers were faced with aggression, disruption, [and] physical threat" and when plaintiff "posed an immediate threat to safety and order within the jail") (alteration in original and internal quotation marks omitted); *Lewis v. Downey,* 581 F.3d 467, 478-79 (7th Cir. 2009) (denying qualified immunity to officers who applied a taser to a pretrial detainee lying "prone on [a] bed, weakened, and docile," in response to his refusal of an order to get out of bed); *Sallenger v. Oakes,* 473 F.3d 731, 741-42 (7th Cir. 2007) (when evaluating the police officers' conduct for purposes of qualified immunity, noting the fact that force was applied after the arrestee was handcuffed was a significant factor in denying immunity).

[2] *See also Meyers v. Balt. County,* 713 F.3d 723, 734 (4th Cir. 2013) (holding that it is an excessive and unreasonable use of force for a police officer repeatedly to administer electrical shocks with a taser on an individual who no longer is armed, has been brought to the ground, has been restrained physically by several other officers, and no longer is actively resisting arrest.); *Austin v. Redford Twp. Police Dep't,* 690 F.3d 490, 498-499 (6th Cir. 2012) (finding that the use of non-lethal, temporarily incapacitating force on a handcuffed suspect who no longer poses a safety threat, flight risk, and/or is not resisting arrest constitutes excessive force); *Oliver v. Fiorino,* 586 F.3d 898, 907 (11th Cir. 2009) (continued use of a taser after a subject has been subdued or is no longer resisting is excessive).

cooperating and did pose a risk or threat that justified the use of the taser initially, the repeated use of a taser on Dockery may be found to be grossly disproportionate to any threat posed and, therefore, unreasonable and excessive. *Banks v. Stolz*, 2015 WL 1903291, at *4 (C.D. Ill. Apr. 27, 2015).

For all of these reasons, summary judgment on the issue of qualified immunity is not appropriate in this case.

### III. Defendants Are Entitled to Summary Judgment On Dockery's Claim for Malicious Prosecution

In Count II of his complaint, Dockery alleges that Sergeant Blackburn and Officer Higgins brought wrongful criminal charges as a pretext to cover up the alleged wrongful use of the taser.

The Seventh Circuit has concluded that a malicious prosecution claim is not a constitutional tort that would support a claim under Section 1983 so long as there is a state law remedy available for the alleged misconduct. *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001); *Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011). This is because "individuals do not have a 'federal right not to be summoned into court and prosecuted without probable cause under either the Fourth Amendment or the Fourteenth Amendment's Procedural Due Process Clause.'" *Ray*, 629 F.3d at 664 (quoting *Tully v. Barada*, 599 F.3d 591, 594 (7th Cir. 2010)).

Illinois law recognizes a claim for malicious prosecution. *See Swick v. Liautaud*, 169 Ill.2d 504 (Ill. 1996). Therefore, Dockery cannot establish a constitutional claim for malicious prosecution (*Newsome*, 256 F.3d at 751), and the absence of a cognizable constitutional violation is fatal to a Section 1983 claim. *Welton v. Anderson*, 770 F.3d 670, 673 (7th Cir. 2014).

Dockery does not respond to Defendants' argument on the viability of his claim for malicious prosecution in Count II that Sergeant Blackburn and Officer Higgins lodged wrongful

12

criminal charges against him as a pretext to cover up the alleged wrongful use of a taser. The failure to respond to an argument made in a motion for summary judgment results in waiver. *De v. City of Chicago*, 912 F. Supp. 2d 709, 733-734 (N.D. Ill. 2012).

Accordingly, Defendants are entitled to summary judgment on Count II.

IV. **Defendants Are Entitled To Summary Judgment On Dockery's Claim For Failure To Provide Medical Care**

In Count III of his complaint, Dockery alleges that he was injured as a result of Defendants' actions and that he requested medical treatment but did not receive any medical care.

A police officer's alleged failure to provide medical treatment following an arrest but before an arraignment is evaluated under the Fourth Amendment objective reasonableness standard. *Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006). To determine whether a police officer's conduct was objectively reasonable, a court should consider: (1) whether the police officer has notice of the detainee's medical needs, either by the detainee's words or through the officer's observation of the detainee's physical symptoms; (2) the seriousness of the medical need; (3) the seriousness of the medical condition balanced with the scope of the requested treatment; and (4) other police interests, which can include administrative, penological, or investigatory concerns. *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2001); *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007).

As an initial matter, Dockery sued Sergeant Blackburn, Officer Higgins and Officer Bernhardt in Count III. This is the only count of the complaint in which Officer Bernhardt is named as a defendant. Defendants state that Officer Bernhardt did not have any contact with Dockery after he was taken into custody at the Evergreen Terrace Apartments, and that Officer Bernhardt was not present in the booking room at the Joliet police station either before, during or

after the tasing incident. Dockery does not dispute these facts. Pl's Resp. to Defs' SOF [ECF No. 82, at ¶77].

Based on these undisputed facts, Officer Bernhardt argues that he in entitled to summary judgment because he was not involved personally in the events during which Dockery allegedly was injured. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (holding that an individual cannot be held liable unless he caused or participated in an alleged violation). Dockery does not respond to this argument and presents no evidence that Officer Bernhardt was present during the events when Dockery allegedly was injured and in need of medical care. Therefore, any such argument is waived, and Officer Bernhardt is entitled to summary judgment.

As to Sergeant Blackburn and Officer Higgins, Dockery argues in his opposition brief to Defendants' motion for summary judgment that he "was visibly injured from the handcuffs that had been applied to his wrists." Pl's Resp. Brief, [ECF No. 81, at 14]. As for injuries resulting from being tased, Dockery argues that he testified at his deposition that he requested medical treatment. Pl's Brief, [ECF No. 81, at 14]. Dockery, however, does not include any factual statements in his Local Rule 56.1 statement of additional facts that he requested medical attention or that Sergeant Blackburn and Officer Higgins were aware that he needed medical attention.[3]

---

[3] Facts may be considered on summary judgment only if they are presented in a compliant Local Rule 56.1 statement or response. *See Dunhill Asset Servs. III, LLC v. Tinberg*, 2012 WL 3028334, at *3 (N.D. Ill. July 23, 2012) ("Under settled law, facts asserted in a brief but not presented in a Local Rule 56.1 statement are disregarded in resolving a summary judgment motion.") (internal quotation marks omitted); *Garner v. Lakeside Cmty. Comm.*, 2011 WL 2415754, at *1 n. 1 (N.D. Ill. June 13, 2011) (finding that "the Court disregards any additional statements of fact contained in a party's response brief but not in its L.R. 56.1(b)(3) [ ] statement of additional facts"); *Curtis v. Wilks*, 704 F.Supp.2d 771, 789 (N.D. Ill. 2010) ("Any facts plaintiffs assert in their response brief that were not included in their LR 56.1 submissions will not be considered."); *Byrd-Tolson v. Supervalu, Inc.*, 500 F.Supp.2d 962, 966 (N.D. Ill. 2007) (holding that "facts are properly presented through the framework of the Rule 56.1 statements, and not through citation in the briefs to raw record material").

The record is devoid of any evidence that Dockery asked for medical treatment or was in need of medical treatment as a result of having handcuffs on his wrist or being tased. Dockery simply states that his wrists were lacerated and that he did not receive medical treatment from Defendants, and Defendants do not dispute these facts. Defs' Resp. to Pls' Additional Facts, [ECF No. 93, at ¶¶ 35-36]. This is not enough to defeat summary judgment without evidence that Dockery requested medical treatment or that Sergeant Blackburn or Officer Higgins were aware of Dockery's request and/or were aware that he was in need of medical attention. There is no evidence that either Sergeant Blackburn or Officer Higgins was aware of any injury to Dockery that required medical attentions at the time.

Because Dockery did not present any evidence that either Sergeant Blackburn or Officer Higgins was aware of Dockery's medical needs or that they were deliberately indifferent to his medical needs, Defendants are entitled to summary judgment on Count III of the complaint.

### V. Defendant City of Joliet Is Entitled To Summary Judgement On Dockery's Failure To Train Claim

In Count IV of his complaint, Dockery alleges that the City of Joliet failed to train its police officers in the proper use and deployment of tasers.

A policy of inadequate training may serve as the basis for municipal liability under Section 1983, but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris,* 489 U.S. 378, 388 (1989). Courts find deliberate indifference on the part of policymakers only when such indifference may be considered a municipal policy or custom. *Id.* at 389 ("Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality-a 'policy' as defined by our prior cases-can a city be liable for such a failure under [Section 1983].").

The Seventh Circuit has recognized that proof of deliberate indifference on the part of a municipality can take the form of either "(1) failure to provide adequate training in light of foreseeable consequences; or (2) failure to act in response to repeated complaints of constitutional violations by its officers." *Sornberger v. City of Knoxville,* 434 F.3d 1006, 1029-30 (7th Cir. 2006); *see also Jenkins v. Bartlett,* 487 F.3d 482, 492 (7th Cir. 2007). Proof of deliberate indifference requires more than "[a] showing of simple or even heightened negligence." *Bd. of County Commissioners of Bryan County v. Brown,* 520 U.S. 397, 407 (1997). Instead, it "requires a high degree of culpability." *Cornfield by Lewis v. Consolidated High Sch. Dist. No. 230,* 991 F.2d 1316, 1327 (7th Cir. 1993) ("In order to ensure that isolated instances of misconduct are not attributable to a generally adequate policy or training program, [the Seventh Circuit] require[s] a high degree of culpability on the part of the policymaker."). Further, the fact that a particular officer may be trained unsatisfactorily alone is not sufficient to assign liability to the municipality, because the officer's shortcomings may have resulted from factors other than a faulty training program. *City of Canton,* 489 U.S. at 390.

At trial, Dockery bears the burden of proving an alleged policy of inadequate training. *See Palmer v. Marion County,* 327 F. 3d 588, 595 (7th Cir. 2003). Therefore, in order to survive Defendants' motion for summary judgment, Dockery must raise a genuine issue of material fact regarding the existence of such a policy, custom or practice within the City of Joliet that actually caused his injuries. *Ellis v. Country Club Hills,* 2011 WL 1113032, at *6 (N.D. Ill. March 24, 2011); *see also Rodgers v. Lincoln Towing,* 771 F.2d 194, 202 (7th Cir. 1985) ("Boilerplate allegation of a municipal policy, entirely lacking in any factual support that a city policy does exist, are insufficient.").

The evidence in this case is insufficient to raise a genuine issue of material fact that the City of Joliet has custom, policy or practice of failing to train or providing inadequate training for its police officers in the proper use and deployment of tasers. Dockery has not presented any evidence that could allow a reasonable jury to conclude either that the City of Joliet was deliberately indifferent in failing to train its police officers as to the proper use of tasers or that the City of Joliet failed to act in response to repeated complaints about its police officers' alleged improper training and use of tasers. It is undisputed that the Joliet Police Department had a General Order that required police officers to successfully complete an initial training course in order to be authorized to use a taser. *See* Defs. SOF [ECF No. 69, at ¶ 71]. It also is not disputed that Sergeant Blackburn successfully completed the training on use of a taser and that she was authorized to carry and use a taser on the date of the incident. *See* Defs. SOF [ECF No. 69, at ¶ 72].

Dockery did not identify any deficiencies in the actual training the City of Joliet provided to its police officers, and there is no evidence of any prior incident of improper taser use by Sergeant Blackburn, or any other police officer in the Joliet Police Department, that would have put the City of Joliet on notice that there was some systemic problem with its police officers' training as to the proper use and deployment of tasers. Absent such evidence or a pattern of similar evidence of alleged improper use of tasers, Dockery's failure to train claim necessarily fails. *See Connick v. Thompson*, 563 U.S. 51, 62-63 (2011) ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.").

Therefore, Defendants are entitled to summary judgment on Count IV of the complaint.

## CONCLUSION

For all of the reasons set forth in the Court's Memorandum Opinion and Order, Defendants' Motion for Summary Judgment [ECF No. 67] is granted as to Counts II, III and IV and denied in all other aspects. This matter is set for status hearing on April 13, 2017 at 11:00 a.m.

It is so ordered.

                                                          Magistrate Judge Jeffrey T. Gilbert

Dated: March 29, 2017